IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DENNIS JONES, et al., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | Civil Action No. 3:11-CV-2153-D |
| VS. | § | |
| | § | |
| DALLAS COUNTY, et al., | § | |
| | § | |
| Defendants. | § | |

MEMORANDUM OPINION
AND ORDER

In this action alleging claims for race discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, 42 U.S.C. §§ 1981 and 1983, and the Texas Commission on Human Rights Act ("TCHRA"), Tex. Lab. Code Ann. §§ 21.001-21.556 (West 2006), and for intentional infliction of emotional distress under Texas law, the seven remaining defendants who were sued in their individual capacities move pursuant to Fed. R. Civ. P. 12(c) for judgment on the pleadings.[1]  For the reasons that follow, the court denies without prejudice the motion filed collectively by six of the individual defendants and instead orders plaintiffs to file a Rule 7(a) reply.  The court grants the other individual defendant's motion, but also grants plaintiffs leave to replead.

---

[1]Although one group of defendants has entitled its motion as a motion for judgment as a matter of law, the motion is a motion for judgment on the pleadings under Rule 12(c) and is evaluated as such.

I

As this lawsuit now stands, three plaintiffs—Dennis Jones ("Dennis"), R.L. Lawson ("Lawson"), and Clarence Jones ("Clarence")—are suing Dallas County, the Dallas County Commissioners Court ("Commissioners Court"),[2] and seven individual defendants:  Mattye Mauldin-Taylor ("Mauldin-Taylor"), Shannon Brown ("Brown"), Dale Lilley ("Lilley"), Darrell Howerton ("Howerton"), Terry Glynn Jones ("Terry"), and Paul Wright ("Wright") (collectively, the Individual Defendants"), and David Womble ("Womble").[3]  Dallas County Facilities Management ("Facilities Management"), which is administered by the Commissioners Court, is the institution charged with managing a complex of four Dallas County jail properties.  At all relevant times, Dennis was employed as a maintenance technician for Facilities Management, and Lawson and Clarence were employed as building mechanics.

Plaintiffs allege that, during their employment, they were subjected to discrimination and harassment based on race, a hostile work environment, disparate terms and conditions of employment, retaliation, and intentional infliction of emotional distress.[4]  The Individual

---

[2]The court does not suggest by referring to the Commissioners Court as a defendant that it is a jural entity that is separate from Dallas County itself.

[3]The court refers to Womble separately because he is represented by separate counsel.

[4]Dennis originally filed this lawsuit against Dallas County Sheriff Lupe Valdez ("Sheriff Valdez") and the Commissioners Court.  Dennis filed an amended complaint in which he dropped Sheriff Valdez as a defendant, added Lawson and Clarence as plaintiffs, and added Dallas County as a defendant.  He also added Mauldin-Taylor, Brown, Lilley, and Womble as defendants in their individual and official capacities.  Plaintiffs later filed a second amended complaint in which they added Howerton and Terry as defendants.

Defendants move for judgment on the pleadings under Rule 12(c), contending they are entitled to dismissal of all of plaintiffs' claims against them based on qualified immunity. Womble also moves for a dismissal under Rule 12(c), asserting that he cannot be held liable under Title VII or the TCHRA, that plaintiffs have failed to state either a retaliation or discrimination claim against him under § 1981 or § 1983, and that plaintiffs' intentional infliction of emotional distress claim is preempted by the TCHRA. Plaintiffs oppose the motions.

## II

The court turns first to the Individual Defendants' motion for judgment on the pleadings based on the defense of qualified immunity.

### A

"[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity likewise applies to state

---

In their answer to plaintiffs' second amended complaint, Mauldin-Taylor, Brown, Lilley, Womble, Howerton, and Terry asserted the affirmative defenses of qualified and official immunity. They also filed a motion to require plaintiffs to file a Rule 7(a) reply. Plaintiffs opposed the motion, but they moved for leave to file a third amended complaint. The court granted the motion for leave and denied without prejudice defendants' motion to require a Rule 7(a) reply. Plaintiffs then filed their third amended complaint, followed by a fourth amended complaint that added Wright as a defendant. After plaintiffs filed their fourth amended complaint, the court denied defendants' motion for judgment as a matter of law without prejudice as moot.

officials sued for constitutional violations under § 1983.  *See id.* at 818 n.30 (citing *Butz v. Economou*, 438 U.S. 478, 504 (1978)); *Palmer v. Johnson*, 193 F.3d 346, 351 (5th Cir. 1999).  "The Supreme Court has characterized the doctrine as protecting 'all but the plainly incompetent or those who knowingly violate the law.'"  *Cozzo v. Tangipahoa Parish Council-President Gov't*, 279 F.3d 273, 284 (5th Cir. 2002) (quoting *Malley v. Briggs*, 475 U.S. 335, 341(1986)).

"To decide whether defendants are entitled to qualified immunity, the court must first answer the threshold question whether, taken in the light most favorable to plaintiffs as the parties asserting the injuries, the facts they have alleged show that defendants' conduct violated a constitutional right."  *Ellis v. Crawford*, 2005 WL 525406, at *3 (N.D. Tex. Mar. 3, 2005) (Fitzwater, J.) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001) ("A court required to rule upon the qualified immunity issue must consider, then, this threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?  This must be the initial inquiry.")).[5]  "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity."  *Saucier*, 533 U.S. at 201. "[I]f a violation could be made out on a favorable view of the parties' submissions, the next,

---

[5]*Saucier's* two-step procedure for determining qualified immunity is no longer mandatory.  *See Pearson v. Callahan*, 555 U.S. 223, 232, 236 (2009).  Courts are free to consider *Saucier's* second prong without first deciding whether the facts show a constitutional violation.  *Id.*  The "decision does not prevent the lower courts from following the *Saucier* procedure; it simply recognizes that those courts should have the discretion to decide whether that procedure is worthwhile in particular cases."  *Id*. at 242.

sequential step is to ask whether the right was clearly established." *Id*. "Even if the government official's conduct violates a clearly established right, the official is nonetheless entitled to qualified immunity if his conduct was objectively reasonable." *Wallace v. County of Comal*, 400 F.3d 284, 289 (5th Cir. 2005). "The objective reasonableness of allegedly illegal conduct is assessed in light of the legal rules clearly established at the time it was taken." *Salas v. Carpenter*, 980 F.2d 299, 310 (5th Cir. 1992) (citing *Anderson v. Creighton*, 483 U.S. 635, 639 (1987)). "'The defendant's acts are held to be objectively reasonable unless *all* reasonable officials in the defendant's circumstances would have then known that the defendant's conduct violated the' plaintiff's asserted constitutional or federal statutory right." *Cozzo*, 279 F.3d at 284 (emphasis in original) (quoting *Thompson v. Upshur County, Tex.*, 245 F.3d 447, 457 (5th Cir. 2001)).

## B

"[W]hen a plaintiff sues a public official under § 1983, the district court must insist on heightened pleading by the plaintiff." *Morin v. Caire*, 77 F.3d 116, 121 (5th Cir. 1996) (citing *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir. 1995) (en banc)). Although a plaintiff may comply with ordinary pleading standards in his initial complaint, and need not anticipate a qualified immunity defense, "[w]hen a public official pleads the affirmative defense of qualified immunity in his answer, the district court may, on the official's motion *or on its own*, require the plaintiff to reply to that defense in detail" pursuant to Rule 7(a). *Schultea*, 47 F.3d at 1433 (emphasis added). "[T]he reply must be tailored to the assertion of qualified immunity and fairly engage its allegations." *Id.* "Heightened pleading requires allegations

of fact focusing specifically on the conduct of the individual who caused the plaintiffs' injury." *Reyes v. Sazan*, 168 F.3d 158, 161 (5th Cir. 1999). The case should not be allowed to proceed unless plaintiffs can assert specific facts that, if true, would overcome the defense. *See Morin*, 77 F.3d at 120 ("Public officials are entitled to qualified immunity from suit under § 1983 unless it is shown by specific allegations that the officials violated clearly established law."); *Schultea*, 47 F.3d at 1434 ("The district court need not allow any discovery unless it finds that plaintiff has supported his claim with sufficient precision and factual specificity[.]"). The "district court's discretion not to [require a Rule 7(a) reply] is narrow indeed when greater detail might assist." *Schultea*, 47 F.3d at 1434; *see also Reyes*, 168 F.3d at 161 ("Faced with sparse details of claimed wrongdoing by officials, trial courts ought routinely require plaintiffs to file a reply under [Rule] 7(a) to qualified immunity defenses.").

The court concludes in its discretion that requiring plaintiffs to file a Rule 7(a) reply would assist the court in determining whether any of the Individual Defendants is entitled to qualified immunity. Although plaintiffs' fourth amended complaint contains some allegations against specific Individual Defendants, plaintiffs have for the most part grouped all of the defendants together under the term "Defendants," thereby precluding the court from determining which, if any, Individual Defendant allegedly committed a constitutional violation. *See, e.g.*, 4th Am. Compl. ¶ 68 (alleging, without specifying any particular defendant, that "Defendants subjected plaintiffs to racist words and images including an animation on Defendant David Womble's telephone . . . . By allowing this animation to be

- 6 -

played, Defendants violated federal rights of Plaintiffs."); *id.* ¶ 71 (alleging, without specifying any particular defendant, that "Defendants subjected Plaintiffs to harassment and to a hostile work environment on the basis of race. There was an offensive ethnocentric caricature drawn on the bulletin or whiteboard on the wall of North Tower purporting to be Plaintiff R.L. Lawson with an Afro, gold tooth, and goatee which remained displayed for 3-4 days." (citation omitted)); *id.* ¶ 78 (alleging, without specifying any particular defendant, that plaintiffs are entitled to recover under Title VII, § 1981, and § 1983 because "Defendants have engaged in and continue to encourage and foster a policy and practice of intentional and recklessly indifferent violation of Plaintiffs' constitutional and statutory rights to equal employment opportunities").

Additionally, for many of the allegations in support of plaintiffs' claims, it is unclear whether plaintiffs seek to hold *any* of the Individual Defendants liable. For example, plaintiffs allege that "Defendants" subjected them to "disparate terms and conditions of employment on the basis of race" by denying them access to tools necessary to perform their jobs, while giving Caucasian employees access to all tools, but they do not specify which, if any, of the Individual Defendants was responsible for this alleged disparate treatment. *See Id.* ¶ 73. Plaintiffs argue that Dennis was "pre-textually terminated" for having a prior felony conviction, whereas Caucasian employees with prior felony convictions were not terminated on the same basis, but they do not allege that any of the Individual Defendants was responsible for the termination decision. *Id.* ¶ 74. They allege Lawson was retaliated against for making a federally-protected discrimination complaint by being assigned to "Kitchen

Duty," yet they provide no facts linking any of the Individual Defendants to the decision to assign Lawson to kitchen duty. Plaintiffs argue that Dennis was "retaliated against by being singled out by Defendant Paul Wright in November 2012," yet they provide no further factual basis that would enable the court to evaluate this claim. *Id.* ¶ 85. The court cites these examples, not as an exhaustive list, but merely to highlight what the fourth amended complaint lacks in terms of specific facts that would enable plaintiffs to overcome the qualified immunity defense.

Plaintiffs' failure to differentiate conduct or separate out the allegations against the various Individual Defendants makes it impossible for the court to determine whether the Individual Defendant in question acted in an objectively unreasonable manner in light of clearly established constitutional standards. *See Waltman v. Payne*, 535 F.3d 342, 346 (5th Cir. 2008) (requiring plaintiff, in order to rebut qualified immunity defense, to show "that he has alleged a violation of a clearly established constitutional right" and that "the defendant's conduct was objectively unreasonable in light of clearly established law at the time of the incident").

Accordingly, under the authority granted to this court in *Schultea*, 47 F.3d at 1433, the court orders that, within 28 days of the date this memorandum opinion and order is filed, the plaintiffs file a Rule 7(a) reply that alleges with particularity all material facts that plaintiffs contend establish their right to recover under § 1983 against each Individual Defendant for the violation of a constitutional right. *See Reyes*, 168 F.3d at 161. Because the court is ordering plaintiffs to file a Rule 7(a) reply, it denies without prejudice the

Individual Defendants' motion for judgment on the pleadings.  After plaintiffs file their Rule

7(a) reply, the Individual Defendants may move anew for judgment on the pleadings if they

have grounds to do so.

III

The court now considers Womble's motion for a judgment on the pleadings.

A

Rule 12(c) provides that "[a]fter the pleadings are closed—but early enough not to

delay trial—a party may move for judgment on the pleadings."  The standard for deciding

a motion under Rule 12(c) is the same as the one for deciding a motion to dismiss under Rule

12(b)(6).  *See, e.g.*, *Hoffman v. L & M Arts*, 2011 WL 3567419, at *4 (N.D. Tex. Aug. 15,

2011) (Fitzwater, C.J.) (citing *Gentilello v. Rege*, 627 F.3d 540, 543-44 (5th Cir. 2010)).

Under Rule 12(b)(6), the court evaluates the pleadings by "accept[ing] 'all

well-pleaded facts as true, viewing them in the light most favorable to the plaintiff[s].'"  *In

re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby

Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)).  To survive

Womble's motion, plaintiffs' fourth amended complaint must allege enough facts "to state

a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

(2007).  "A claim has facial plausibility when the plaintiff[s] plead[] factual content that

allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "The plausibility standard

is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a

- 9 -

defendant has acted unlawfully." *Id.*; *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level[.]"). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (alteration omitted) (quoting Fed. R. Civ. P. 8(a)(2)). Furthermore, under Rule 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Although "the pleading standard Rule 8 announces does not require 'detailed factual allegations,'" it demands more than "'labels and conclusions.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). And "'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

B

Womble seeks dismissal of plaintiffs' claims brought against him in his individual capacity under Title VII and TCHRA, arguing that because he was not plaintiffs' employer, he cannot be held liable under either statute. Plaintiffs do not respond to this argument.

The court holds that plaintiffs cannot recover under Title VII or the TCHRA against Womble individually. It is undisputed that Womble was not plaintiffs' employer. Only "employers," however, "not individuals acting in their individual capacity who do not otherwise meet the definition of 'employers,' can be liable under [T]itle VII." *Grant v. Lone Star Co.*, 21 F.3d 649, 652 (5th Cir. 1994); *see also Gallentine v. Hous. Auth. of City of Port Arthur, Tex.*, 919 F.Supp.2d 787, 796 (E.D. Tex. 2013) ("It is well settled in the Fifth Circuit

that individual employees, even those functioning in a supervisory capacity, cannot be held personally liable under Title VII, because they are not 'employers,' as that term is defined in Title VII." (citing cases)).  Similarly, "Texas state and federal courts have uniformly held that supervisory personnel are not liable in their individual capacity under the TCHRA." *Marabella v. Autonation U.S.A. Corp.*, 88 F.Supp.2d 750, 752 (S.D. Tex. 2000); *see also Jenkins v. Guardian Indus. Corp*., 16 S.W.3d 431, 439 (Tex. App. 2000, pet. denied) ("[S]upervisors and managers are not liable in their individual capacities for alleged acts of discrimination under the TCHRA."); *City of Austin v. Gifford*, 824 S.W.2d 735, 742 (Tex. App. 1992, no writ) ("The [TCHRA] does not create a cause of action against supervisors or individual employees.").

Accordingly, the court grants Womble's motion and dismisses plaintiffs' Title VII and TCHRA claims against Womble to the extent plaintiffs assert these claims against him in his individual capacity.

## C

Womble next seeks to dismiss plaintiffs' retaliation and discrimination claims brought under §§ 1981 and 1983.  He argues that plaintiffs do not allege that they suffered an adverse employment action, and, even if they did, they do not assert that he was personally involved in any alleged adverse employment actions.

The court begins with plaintiffs' discrimination claim.  In support of this claim, plaintiffs allege that they are entitled to recover under §§ 1981 and 1983 because, *inter alia*, they were subjected to disparate terms and conditions of employment and disparate

treatment.[6]  Assuming *arguendo* that plaintiffs were required to, and did, plead that they suffered an adverse employment action, the court nonetheless grants Womble's motion because plaintiffs have failed to allege that Womble subjected them to disparate terms and conditions of employment or disparate treatment, as required to recover under §§ 1981 and 1983.

To state a claim in an individual capacity suit brought under § 1983, a claimant must allege a violation of the Constitution or federal law by a person acting under color of state law.  42 U.S.C. § 1983.  Although "[t]he generic pleading requirements of [Rule 8] govern suits against individual defendants in their official capacity," "[p]laintiffs suing governmental officials in their individual capacities . . . must allege specific conduct giving rise to a constitutional violation."  *Oliver v. Scott*, 276 F.3d 736, 741 (5th Cir. 2002) (citing *Anderson v. Pasadena Indep. Sch. Dist.*, 184 F.3d 439, 443 (5th Cir. 1999)).  "This standard requires more than conclusional assertions: The plaintiff must allege specific facts giving rise to a

---

[6]Plaintiffs also allege they were subjected to harassment and a hostile work environment.  Womble does not move to dismiss plaintiffs' hostile work environment claim.  Although he moves to dismiss plaintiffs' "race discrimination claim," he does not mention plaintiffs' harassment or hostile work environment allegations (many of which focus specifically on actions by Womble).  Additionally, Womble has focused his entire argument on plaintiffs' failure to plead an "adverse employment action," which is not—as phrased—a required element of a hostile work environment claim.  *See, e.g.*, *Celestine v. Petroleos de Venezuela SA*, 266 F.3d 343, 353 (5th Cir. 2001) ("A prima facie case of racial harassment alleging hostile work environment normally consists of five elements: (1) the employee belongs to a protected group; (2) the employee was subjected to unwelcome harassment; (3) the harassment complained of was based on race; (4) the harassment complained of affected a term[,] condition or privilege of employment; (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action.").

constitutional violation." *Id.* (citing *Baker v. Putnal*, 75 F.3d 190, 194 (5th Cir. 1996)). Additionally, in the context of § 1983 claims against supervisors, "[f]or there to be liability under section 1983, a defendant must have been personally involved in the conduct causing a deprivation of constitutional rights, or there must be a causal connection between the actions of that person and the constitutional right sought to be redressed." *King v. Louisiana*, 294 Fed. Appx. 77, 83 (5th Cir. 2008) (citing *Lozano v. Smith*, 718 F.2d 756, 768 (5th Cir. 1983)) (affirming dismissal of claims against individual defendants, based on qualified immunity, where the allegations against these defendants failed to set forth any constitutional violation); *see also Anderson*, 184 F.3d at 443 ("In order to state a cause of action under § 1983, [plaintiff] must identify defendants who were either personally involved in the constitutional violation or whose acts are causally connected to the constitutional violation alleged.").

In support of their disparate treatment claim, plaintiffs allege that "African American plaintiffs were denied access to tools necessary to perform their jobs and which they were qualified to use, whereas white employees . . . were given keys allowing them access to all tools." 4th Am. Compl. ¶ 73. They assert that Dennis "was pre-textually terminated for a prior felony conviction and later reinstated . . . whereas white employees with prior felony convictions were not terminated on the same basis." *Id*. at ¶ 74. And they allege:

> Defendants subjected Plaintiffs to racial discrimination in the form of hostile work environment, disparate hiring and promotion practices, disparate application of Dallas County disciplinary policies and procedures, and disparate terms and conditions of employment, such as being disparately penalized

- 13 -

for tardiness, being disparately subjected to arbitrary job requirements, such as telephon[e] calling security every 60 minutes, being arbitrarily transferred to new job sites, disparate compensation, and being given less time to prepare lunches than White employees. African American Plaintiffs, though qualified, were not considered or granted interviews for desired positions within Facilities Management for which they applied or expressed interest, while white applicants with less professional certification and experience were given the positions and allowed to train on the job. African American Plaintiffs, though qualified were hired at lower pay rates and promoted less quickly than[] equally or less qualified white applicants and employees. African American Plaintiffs were hired through a formal hiring process during which prior experience was considered, whereas white employees were hired without experience and allowed to complete on the job training . . . . After the Restructuring, African American plaintiffs were denied access to preferred daytime work schedules and scheduling accommodation for pursuing higher education, whereas white employees of the same job title and equal or less professional qualification w[ere] granted preferential scheduling.

*Id.* at ¶¶ 75-76 (citations omitted). Setting aside plaintiffs' failure to plausibly allege that either Dennis, Clarence, or Lawson was himself subjected to the alleged disparate treatment, plaintiffs fail to plead that *Womble* was personally involved in any of the conduct that allegedly deprived them of their constitutional rights. *See King*, 294 Fed. Appx. at 83. In fact, the only allegation that even mentions Womble by name is Howerton's alleged statement to Dennis that "Dale Lilley and David Womble are terminating you." 4th Am. Compl. ¶ 74. This statement, without more, is insufficient to plausibly allege that Womble deprived Dennis or any other plaintiff of any rights, privileges, or immunities secured by the Constitution or laws of the United States.

- 14 -

Accordingly, the court grants Womble's motion to dismiss plaintiffs' § 1983 discrimination claims against him in his individual capacity to the extent these claims are based on alleged disparate treatment and disparate terms and conditions of employment.[7]

Plaintiffs have similarly failed to plausibly allege, in support of their retaliation claim brought against Womble in his individual capacity, that Womble retaliated against them for engaging in protected activity, in violation of their federal or constitutional rights. To the extent plaintiffs base their retaliation claim on the allegation that Lawson was reassigned to kitchen duty in retaliation for filing a complaint about the "fake metal teeth incident," plaintiffs do not plausibly allege that it was Womble, as opposed to any of the other "managers," who reassigned Lawson.[8] The court thus dismisses plaintiffs' § 1983 retaliation claim asserted against Womble in his individual capacity.

## D

Finally, Womble moves for a dismissal of plaintiffs' state-law intentional infliction

---

[7]In their response, plaintiffs appear to argue that Womble should be held liable in his official capacity ("should he be reinstated to employment with Dallas County") for failing to genuinely investigate African-American workers' discrimination complaints, granting unequal access to tools, terminating African-American workers with felonies disclosed prior to hiring, and disparately applying time-reporting policies. Because no motion for judgment on the pleadings has been filed with regard to official capacity claims asserted against Womble, the court does not consider whether any official-capacity claim should be dismissed.

[8]Plaintiffs also argue in their response that, if reinstated, Womble is liable in his official capacity for intimidating witnesses to this litigation in retaliation for making discrimination complaints. The court will not address this argument, however, for the reasons explained *supra* at note 7.

of emotional distress ("IIED") claim, arguing that this claim is preempted by the TCHRA.

Under Texas law, "a plaintiff may not bring an IIED claim when other statutory remedies are available for the underlying conduct." *Pacheco v. Zanios Foods, Inc.*, 502 F.Supp.2d 508, 512 (W.D. Tex. 2006) (citing *Hoffmann-La Roche Inc. v. Zeltwanger*, 144 S.W.3d 438, 445 (Tex. 2004)). IIED "is a 'gap-filler' tort never intended to supplant or duplicate existing statutory or common-law remedies." *Creditwatch, Inc. v. Jackson*, 157 S.W.3d 814, 816 (Tex. 2005) (quoting *Zeltwanger*, 144 S.W.3d at 447). "Even if other remedies do not explicitly preempt the tort, their availability leaves no gap to fill." *Id.* "Therefore, courts have found that employees' IIED claims against supervisors are precluded when there are other statutory remedies available against the employer." *Mercer v. Arbor E & T*, 2012 WL 1425133, at *10 (S.D. Tex. Apr. 21, 2012) (citing cases); *see also Muniz v. El Paso Marriott*, 2009 WL 4878619, at *3 (W.D. Tex. Dec. 8, 2009) ("Under Texas law, a claim for IIED is not available against an employee's supervisor if the same alleged conduct supports a claim for relief against the employer under other legal theories, such as the anti-discrimination statutes."); *Rawlings v. Travelers Prop. Cas. Ins. Co.*, 2008 WL 2115606, at *4 (N.D. Tex. May 20, 2008) (O'Connor, J.) ("[A] plaintiff cannot bring a claim for [IIED] against a *defendant supervisor* where the plaintiff could bring a state statutory claim or other tort claim against *plaintif*[f]*'s employer* based on the same conduct alleged. Accordingly, for Plaintiff to have stated a claim on which she has a reasonable basis of recovery against . . . her former supervisor, Plaintiff's IIED claim cannot be based on facts that could form the basis of any workplace harassment or discrimination claim at all, even

- 16 -

an action solely against her employer." (emphasis in original) (citations omitted)).

Plaintiffs have "not attempted to distinguish the conduct which supports the IIED claim from the conduct which supports the statutory workplace claims." *Muniz*, 2009 WL 4878619, at *3. They allege that Womble "subjected [them] to intentional infliction of emotional distress by directing and allowing to be directed toward Plaintiffs racist, discriminatory, homophobic, and physically threatening remarks and race-based hostile remarks, actions, and disparate treatment." 4th Am. Compl. ¶ 89. They also assert that the Individual Defendants "intentionally inflicted emotional distress upon Plaintiffs by subjecting them to fear of physical attack on the basis of race and in retaliation for making discrimination complaints." *Id.* ¶ 93.[9] By these allegations, plaintiffs are "attempting impermissibly to predicate [their] IIED claim on the same conduct which underpins" their discrimination and retaliation claims. *Muniz*, 2009 WL 4878619, at *3. In other words, the "gravamen" of plaintiffs' IIED claim is discrimination and retaliation, and they invoke the same facts to allege discrimination and retaliation that they rely on to allege IIED. *See Swafford v. Bank of Am. Corp.*, 401 F.Supp.2d 761, 764 (S.D. Tex. 2005); *see also Phillips v. United Parcel Serv.*, 2011 WL 2680725, at *14 (N.D. Tex. June 21, 2011) (Ramirez, J.) ("Since Plaintiff relies on the same alleged conduct as part of her discrimination, harassment, and retaliation claims, her claim of [IIED] is preempted."), *rec. adopted*, 2011 WL 2678949

---

[9]Because the other allegations in support of plaintiffs' IIED claim are directed at defendants other than Womble, the court does not consider these allegations in dismissing plaintiffs' IIED claim against Womble.

(N.D. Tex. July 8, 2011) (Fish, J.), *aff'd*, 485 Fed. Appx. 676 (5th Cir. 2012), *cert. denied*, 133 S.Ct. 1588 (2013).

Accordingly, plaintiffs' IIED claim against Womble is preempted and must be dismissed.

E

Although the court is dismissing plaintiffs' § 1983 individual-capacity disparate treatment and retaliation claims and IIED claims against Womble, it will permit plaintiffs to replead.  "[D]istrict courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal."  *In re Am. Airlines, Inc., Privacy Litig.*, 370 F.Supp.2d 552, 567-68 (N.D. Tex. 2005) (Fitzwater, J.) (internal quotation marks and citation omitted).  Even though plaintiffs are on their fourth amended complaint, this is the first occasion for the court to evaluate the substantive merits of their claims against Womble.  Because plaintiffs have not stated that they cannot, or are unwilling to, cure the defects that the court has identified, the court grants them 28 days from the date this memorandum opinion and order is filed to file a fifth amended complaint.  Because Womble has pleaded the affirmative defense of qualified immunity, plaintiffs must use this opportunity to fulfill their obligation to address the defense with the same level of specificity that would apply were plaintiffs filing a separate Rule 7(a) reply to Womble's defense.

- 18 -

\*   \*   \*

For the foregoing reasons, the court orders plaintiffs to file a Rule 7(a) reply within 28 days of the date this memorandum opinion and order is filed, and it denies without prejudice the Individual Defendants' motion for judgment on the pleadings.  The court grants Womble's motion for judgment on the pleadings, but grants plaintiffs leave to replead.

**SO ORDERED.**

December 6, 2013.

_____
SIDNEY A. FITZWATER
CHIEF JUDGE