IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

DENNIS JONES, et al.,                  §
                                       §
                 Plaintiffs,           §
                                       §   Civil Action No. 3:11-CV-2153-D
VS.                                    §
                                       §
DALLAS COUNTY, et al.,                 §
                                       §
                 Defendants.           §

MEMORANDUM OPINION
AND ORDER

        In this action alleging claims for race discrimination and retaliation under Title VII

of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, 42 U.S.C. §§ 1981

and 1983, and the Texas Commission on Human Rights Act ("TCHRA"), Tex. Lab. Code

Ann. §§ 21.001-21.556 (West 2006), and for intentional infliction of emotional distress under

Texas law, plaintiffs have filed a court-ordered Fed. R. Civ. P. 7(a) reply, and six of the

individually-named defendants have filed a renewed motion under Rule 12(c) for judgment

on the pleadings.  One of the individually-named defendants has also filed a second Rule

12(c) motion for judgment on the pleadings.  For the following reasons, the court grants the

renewed motion for judgment on the pleadings filed by the six individually-named

defendants, and it grants the remaining individual defendant's motion for judgment on the

pleadings.  The court also directs the parties to propose a deadline for filing summary

judgment motions now that the court has addressed the motions for judgment on the

pleadings.

I

In this lawsuit, three plaintiffs—Dennis Jones ("Dennis"), R.L. Lawson ("Lawson"), and Clarence Jones ("Clarence")—are suing Dallas County, the Dallas County Commissioners Court ("Commissioners Court"),[1] and seven individual defendants: Mattye Mauldin-Taylor ("Mauldin-Taylor"), Shannon Brown ("Brown"), Dale Lilley ("Lilley"), Darrell Howerton ("Howerton"), Terry Glynn Jones ("Terry"), and Paul Wright ("Wright") (collectively, the Individual Defendants"), and David Womble ("Womble").[2] Dallas County Facilities Management ("Facilities Management"), which is administered by the Commissioners Court, is the institution charged with managing a complex of four Dallas County jail properties. At all relevant times, Dennis was employed as a maintenance technician for Facilities Management, and Lawson and Clarence were employed as building mechanics.

In their fourth amended complaint,[3] plaintiffs allege that, during their employment, they were subjected to discrimination and harassment based on race, a hostile work environment, disparate terms and conditions of employment, retaliation, and intentional

---

[1]The court does not suggest by referring to the Commissioners Court as a defendant that it is a jural entity that is separate from the County itself.

[2]The court refers to Womble separately because he is represented by separate counsel.

[3]On December 28, 2013 plaintiffs filed a fifth amended complaint (which was entitled "Fourth Amended Complaint"), which they withdrew on January 3, 2014. They then filed on January 4, 2014 a "Fourth Amended (Corrected) Complaint," which they withdrew on January 29, 2014. Accordingly, the fourth amended complaint, in combination with the Rule 7(a) reply, is plaintiffs' operative pleading.

infliction of emotional distress. They seek to recover damages and declaratory and injunctive relief pursuant to Title VII, 42 U.S.C. §§ 1981 and 1983, the TCHRA, and Texas common law.

In April 2013 the Individual Defendants filed under Rule 12(c) a motion for judgment on the pleadings, arguing, *inter alia*, that the federal claims that plaintiffs asserted against them in their individual capacities pursuant to 42 U.S.C. §§ 1981 and 1983 were subject to the defense of qualified immunity. The court dismissed the Individual Defendants' motion without prejudice, ordering instead, under the authority granted in *Schultea v. Wood*, 47 F.3d 1427, 1433-34 (5th Cir. 1995) (en banc), that plaintiffs file a Rule 7(a) reply that alleged with particularity all material facts that plaintiffs contended establish their right to recover under § 1983 against each of the Individual Defendants for the violation of a constitutional right. *See Jones v. Dallas Cnty.*, 2013 WL 6388441, at *4 (N.D. Tex. Dec. 6, 2013) (Fitzwater, C.J.) ("*Jones I*"). Plaintiffs filed the Rule 7(a) reply, and the Individual Defendants move anew for judgment on the pleadings under Rule 12(c).

Defendant Womble separately moved for judgment on the pleadings on plaintiffs' individual-capacity Title VII and TCHRA claims, § 1983 discrimination claim based on allegations of disparate treatment and disparate terms and conditions of employment, § 1983 retaliation claim, and intentional infliction of emotional distress claim. The court granted Womble's motion to dismiss, but it also granted plaintiffs leave to amend their complaint. *Id.* at *8. Although plaintiffs twice amended their complaint, they withdrew their amendments. *See supra* n.3. Womble has now filed a second motion for judgment on the

pleadings,[4] seeking dismissal of plaintiffs' § 1983 hostile work environment claims brought

against him in his individual capacity and a final judgment pursuant to Rule 54(b).

Plaintiffs oppose both motions.

_____

[4]In response to Womble's motion, plaintiffs contend that "[t]he Court did not grant Womble leave to file a new, renewed, or second motion for judgment on the pleadings to request judgment on the personal-capacity hostility claim or to request judgment on the official-capacity claims or for any other reason." Ps. Feb. 10, 2014 Br. 1. They argue that the court should find that the motion is untimely because it was filed after the December 15, 2013 deadline in the May 1, 2012 amended scheduling order ("Scheduling Order") for filing "motion[s] not otherwise covered." Plaintiffs also seek attorney's fees.

Although Rule 12(g)(2) generally prohibits a party from making successive Rule 12 motions, this prohibition does not apply to a motion for judgment on the pleadings based on a failure to state a claim on which relief can be granted. *See* Rule 12(g)(2) ("*Except as provided in Rule 12(h)(2)* . . . a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion" (emphasis added)), *and* Rule12(h)(2) ("Failure to state a claim upon which relief can be granted . . . may be raised . . . by a motion under Rule 12(c)"); *see also, e.g., Deerborne Cottages, LLC v. First Bank*, 2012 WL 4363742, at *3 (W.D.N.C. Sept. 24, 2012) ("While a party is generally prohibited from making successive Rule 12 motions, such prohibition does not apply to a motion for judgment on the pleadings based upon a failure to state a claim upon which relief can be granted." (citations omitted)). Rule 12(c) permits a party to move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial." Rule 12(c). Both conditions are satisfied here. And because Womble did not have the benefit of plaintiffs' Rule 7(a) reply when he filed his first motion for judgment on the pleadings, and plaintiffs did not file their Rule 7(a) reply until December 29, 2013 (thus precluding Womble from filing a Rule 12(c) motion prior to the December 15, 2013 Scheduling Order deadline for "motion[s] not otherwise covered"), the court concludes that there is good cause to consider Womble's 12(c) motion. This motion is directed at plaintiffs' individual-capacity hostile work environment claim asserted against him. Considering the motion will enable the court to resolve whether plaintiffs have alleged sufficient facts to overcome Womble's qualified immunity defense. *See, e.g., Morin v. Caire*, 77 F.3d 116, 120 (5th Cir. 1996) ("Public officials are entitled to qualified immunity from suit under § 1983 unless it is shown by specific allegations that the officials violated clearly established law."); *Schultea*, 47 F.3d at 1434 ("The district court need not allow any discovery unless it finds that plaintiff has supported his claim with sufficient precision and factual specificity[.]").

II

Rule 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."  The standard for deciding a motion under Rule 12(c) is the same as the one for deciding a motion to dismiss under Rule 12(b)(6).  *See, e.g., Hoffman v. L & M Arts*, 2011 WL 3567419, at *4 (N.D. Tex. Aug. 15, 2011) (Fitzwater, C.J.) (citing *Gentilello v. Rege*, 627 F.3d 540, 543-44 (5th Cir. 2010)).

Under Rule 12(b)(6), the court evaluates the pleadings by "accept[ing] 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff[s].'"  *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)).  To survive Womble's motion, plaintiffs' pleadings must allege enough facts "to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff[s] plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.*; *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level[.]").  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'"  *Iqbal*, 556 U.S. at 679 (alteration omitted) (quoting Fed. R. Civ. P. 8(a)(2)).  Furthermore, under

- 5 -

Rule 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Although "the pleading standard Rule 8 announces does not require 'detailed factual allegations,'" it demands more than "'labels and conclusions.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). And "'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

## III

The court first considers whether qualified immunity applies to plaintiffs' individual-capacity claims, in which they allege under §1983 that defendants Lilley and Terry[5] are liable for harassment, in violation of plaintiffs' Fourteenth Amendment equal protection rights.[6]

## A

"[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow*

---

[5]Although in their Rule 7(a) reply plaintiffs assert an individual-capacity § 1983 harassment and hostile work environment claim against Womble (which the court addresses below), they do not assert an individual-capacity § 1983 harassment and hostile work environment claim against any of the remaining Individual Defendants. And to the extent they intended to allege such a claim in their fourth amended complaint, they have not pleaded this claim with sufficient specificity to enable the court to conclude that plaintiffs have overcome the remaining Individual Defendants' qualified immunity defenses on this claim.

[6]In their fourth amended complaint, plaintiffs have not pleaded a violation of the Fourteenth Amendment's Equal Protection Clause. They instead limit their federal claims to Title VII and 42 U.S.C. §§ 1981 and 1983. Because the analysis would be the same had plaintiffs pleaded their § 1983 claim under the Fourteenth Amendment instead of § 1981, the court will treat their § 1983 claim as one brought under the Equal Protection Clause.

*v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity likewise applies to state officials sued for constitutional violations under § 1983. *See id.* at 818 n.30 (citing *Butz v. Economou*, 438 U.S. 478, 504 (1978)); *Palmer v. Johnson*, 193 F.3d 346, 351 (5th Cir. 1999). "The Supreme Court has characterized the doctrine as protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Cozzo v. Tangipahoa Parish Council-President Gov't*, 279 F.3d 273, 284 (5th Cir. 2002) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

"To decide whether defendants are entitled to qualified immunity, the court must first answer the threshold question whether, taken in the light most favorable to plaintiffs as the parties asserting the injuries, the facts they have alleged show that defendants' conduct violated a constitutional right." *Ellis v. Crawford*, 2005 WL 525406, at *3 (N.D. Tex. Mar. 3, 2005) (Fitzwater, J.) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001) ("A court required to rule upon the qualified immunity issue must consider, then, this threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right? This must be the initial inquiry.")).[7] "If no constitutional right would have been violated were the allegations established, there is no

---

[7]*Saucier*'s two-step procedure for determining qualified immunity is no longer mandatory. *See Pearson v. Callahan*, 555 U.S. 223, 232, 236 (2009). Courts are free to consider *Saucier*'s second prong without first deciding whether the facts show a constitutional violation. *Id*. at 236. The "decision does not prevent the lower courts from following the *Saucier* procedure; it simply recognizes that those courts should have the discretion to decide whether that procedure is worthwhile in particular cases." *Id*. at 242.

necessity for further inquiries concerning qualified immunity." *Saucier*, 533 U.S. at 201.

"[I]f a violation could be made out on a favorable view of the parties' submissions, the next,

sequential step is to ask whether the right was clearly established." *Id*. "Even if the

government official's conduct violates a clearly established right, the official is nonetheless

entitled to qualified immunity if his conduct was objectively reasonable." *Wallace v. Cnty.*

*of Comal*, 400 F.3d 284, 289 (5th Cir. 2005). "The objective reasonableness of allegedly

illegal conduct is assessed in light of the legal rules clearly established at the time it was

taken." *Salas v. Carpenter*, 980 F.2d 299, 310 (5th Cir. 1992) (citing *Anderson v. Creighton*,

483 U.S. 635 (1987)). "'The defendant's acts are held to be objectively reasonable unless

*all* reasonable officials in the defendant's circumstances would have then known that the

defendant's conduct violated the' plaintiff's asserted constitutional or federal statutory right."

*Cozzo*, 279 F.3d at 284 (quoting *Thompson v. Upshur Cnty., Tex.*, 245 F.3d 447, 457 (5th Cir.

2001)).

B

Section 1983 and Title VII are "parallel causes of action." *Cervantez v. Bexar Cnty.*

*Civil Serv. Comm'n*, 99 F.3d 730, 734 (5th Cir. 1996). Accordingly, the "inquiry into

intentional discrimination is essentially the same for individual actions brought under

sections 1981 and 1983, and Title VII." *Wallace v. Tex. Tech Univ.*, 80 F.3d 1042, 1047 (5th

Cir. 1996) (citing *Briggs v. Anderson*, 796 F.2d 1009, 1019-21 (8th Cir. 1986)). Generally,

to establish a prima facie case of a hostile work environment a plaintiff must show:

> (1) [he] belongs to a protected group; (2) [he] was subjected to
> unwelcomed harassment; (3) the harassment complained of was
> based on race; (4) the harassment complained of affected a term,
> condition, or privilege of employment; [and] (5) the employer
> knew or should have known of the harassment in question and
> failed to take prompt remedial action.

*Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002) (citations omitted).  The fifth

element need not be established if the harassment is allegedly committed by the victim's

supervisor.  *Wooten v. Fed. Express Corp.*, 2007 WL 63609, at *19 (N.D. Tex. Jan. 9, 2007)

(Fitzwater, J.) (citing *Celestine v. Petroleos de Venezuella SA*, 266 F.3d 343, 353-54 (5th Cir.

2001)), *aff'd*, 325 Fed. Appx. 297 (5th Cir. 2009).  Regarding the fourth element,

> [h]arassment affects a term, condition, or privilege of
> employment if it is sufficiently severe or pervasive to alter the
> conditions of the victim's employment and create an abusive
> working environment.  Workplace conduct is not measured in
> isolation.  In order to deem a work environment sufficiently
> hostile, all of the circumstances must be taken into
> consideration. This includes the frequency of the discriminatory
> conduct; its severity; whether it is physically threatening or
> humiliating, or a mere offensive utterance; and whether it
> unreasonably interferes with an employee's work performance.
> To be actionable, the work environment must be both
> objectively and subjectively offensive, one that a reasonable
> person would find hostile or abusive, and one that the victim in
> fact did perceive to be so.

*Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 651 (5th Cir. 2012) (citations and internal

quotation marks omitted).

## C

Plaintiffs assert a § 1983 hostile work environment claim against Lilley in his personal

capacity, alleging that he intentionally allowed racist graffiti containing the phrases "White

- 9 -

Power" and "F--k you Israel" (alteration added)[8] to remain overnight on the walls of the Decker Detention Center.  Israel Garza ("Garza") is a Hispanic employee who worked as a maintenance engineer for Facilities Management.  Plaintiffs allege that Lilley was notified of the graffiti on February 1, 2012 and did not ensure its removal until February 2, 2012.[9] They contend that Lilley is personally liable for damages under § 1983 because all reasonable supervisors in his position would have known that not immediately removing the phrases "White Power" and "F--k You Israel" in large painted letters from workplace walls, "even if it means hanging cloth or getting a bucket of paint and painting over it yourself . . . and then not apologizing to non-white workers and not warning . . . the staff to not paint racist graffiti on the walls in the future, violates the workers' civil rights."  Ps. Rule 7(a) Reply 24.

Defendants argue that Lilley is entitled to qualified immunity because plaintiffs allege that only Clarence saw the graffiti, and they fail to allege when Lilley actually learned about the graffiti and when he directed that it be removed (as opposed to when it actually was removed).  They thus argue that the factual allegations are insufficient to establish any constitutional violation or wrongful conduct by Lilley and do not demonstrate anything objectively unreasonable about Lilley's conduct.

---

[8]In this memorandum opinion and order, the court has used the redaction "F--k" in place of the actual term.  Accordingly, the court will not hereafter indicate that the term has been altered.

[9]They also allege that Lilley required Garza, a Hispanic employee, to remove the graffiti, which shows that Lilley used the graffiti to harass people, including plaintiffs.

The court holds that plaintiffs have failed to allege that Lilley subjected them to harassment that affected a condition of their employment. First, the graffiti directed at Garza, a Hispanic employee, is not based on race. Under the well-pleaded facts, this graffiti cannot form the basis of a race-based hostile work environment claim. As to the remaining graffiti, plaintiffs allege that Lilley was notified on February 1, 2012, and that the graffiti was removed the very next day, on February 2. Allowing graffiti containing the phrase "White Power" to remain exposed on workplace walls overnight is not sufficient, without more, to constitute severe and pervasive harassment that altered the terms of plaintiffs' employment. "[I]solated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Hockman v. Westward Commc'ns, LLC*, 407 F.3d 317, 328 (5th Cir. 2004) (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)) (internal quotation marks omitted). In support of their individual-capacity § 1983 claim against Lilley, plaintiffs allege a single instance of racist graffiti, which Lilley had removed the day after he learned about it. This is insufficient to establish that Lilley violated the plaintiffs' rights under § 1981 or the Fourteenth Amendment (remediable via § 1983). Because plaintiffs have not alleged facts that show that Lilley's conduct violated a constitutional right, the court dismisses the § 1983 claim asserted against Lilley in his individual capacity on the basis of qualified immunity.

D

Plaintiffs also assert a § 1983 hostile work environment claim against Terry in his personal capacity, alleging that instructions to African-American workers, including

plaintiffs, were posted on a workplace bulletin board drawn inside a racist caricature of an African-American male with an Afro, goatee, and gold tooth, and that the caricature was posted for three to four days. They allege that the caricature "seems to be signed by [Terry]." Ps. Rule 7(a) Reply 25.

Defendants argue that Terry is entitled to qualified immunity because plaintiffs do not allege that they ever saw the caricature, and because the facts asserted against him are not specific enough to permit the conclusion that he subjected anyone to a hostile work environment "or was actually involved in some way with the caricature." Ds. Br. 11.

As with the allegations against Lilley, plaintiffs' allegations against Terry are insufficient to overcome the defense of qualified immunity. Assuming *arguendo* that Terry in fact drew and posted the caricature, this isolated incident is not severe or pervasive enough to alter the conditions of plaintiffs' employment. *Hockman*, 407 F.3d at 328. This is especially the case where, as here, plaintiffs do not allege that any plaintiff actually saw the caricature when it was posted or that the caricature was directed at them. Because plaintiffs have not alleged facts that show that Terry's conduct violated their constitutional rights, the court dismisses the claim asserted against Terry in his individual capacity on the basis of qualified immunity.[10]

_____

[10]In holding that plaintiffs have failed to allege sufficient facts to show that either Lilley's or Terry's conduct alone violated a constitutional right, the court does not suggest that the allegations against these two defendants, in combination with the allegations against Womble and the remaining Individual Defendants, would be insufficient to state a hostile work environment claim against Dallas County.

E

Because the court holds that plaintiffs have not alleged facts that show that any of the Individual Defendants violated a constitutional right, "there is no necessity for further inquiries concerning qualified immunity." *Saucier*, 533 U.S. at 201. Accordingly, the § 1983 claims asserted against Mauldin-Taylor, Brown, Lilley, Howerton, Terry, and Wright in their individual capacities are dismissed.[11]

IV

Plaintiffs assert claims for intentional infliction of emotional distress ("IIED") against several of the Individual Defendants in their individual capacities. Although the Individual Defendants move for judgment on the pleadings "as to all federal and state law claims," Ds. Br. 1, the only individual-capacity IIED claim they address in their brief is the allegation that Taylor, Lilley, and Wright threatened to terminate Dennis' employment if he did not take a

---

[11]Defendants move for judgment on the pleadings "as to all federal and state law claims." Ds. Br. 1. The arguments set forth in their brief, however, are directed only to the qualified immunity defense. "Qualified immunity attaches only to officials in their individual, not their official, capacities." *Foley v. Univ. of Hous. Sys.*, 355 F.3d 333, 337 (5th Cir. 2003) (citing *Harvey v. Blake*, 913 F.2d 226, 228 (5th Cir. 1990)). The court does not suggest that plaintiffs' official-capacity claims are not subject to dismissal, especially in light of the clearly-established rule that a suit against a government official in his official capacity is "only another way of pleading an action against an entity of which [the official] is an agent." *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 690 n.55 (1978); *see also Kentucky v. Graham*, 473 U.S. 159, 166 (1985) ("As long as the government entity receives notice and an opportunity to respond, an 'official-capacity suit' is . . . treated as a suit against the entity."). But the court is not now dismissing the official-capacity claims asserted against the Individual Defendants. The Individual Defendants note in their brief that official-capacity claims are treated as claims against the county, *see, e.g.,* Ds. Br. 11, but they have not specifically moved for dismissal of these claims on that basis.

- 13 -

polygraph test. Defendants argue that the allegations are not "sufficient to establish either

[IIED] or to overcome these three Defendants' right to official immunity under state law."

*Id.* at 12.

As this court explained in *Jones I*,

> [u]nder Texas law, a plaintiff may not bring an IIED claim when
> other statutory remedies are available for the underlying
> conduct. IIED is a gap-filler tort never intended to supplant or
> duplicate existing statutory or common-law remedies. Even if
> other remedies do not explicitly preempt the tort, their
> availability leaves no gap to fill. Therefore, courts have found
> that employees' IIED claims against supervisors are precluded
> when there are other statutory remedies available against the
> employer.

*Jones I*, 2013 WL 6388441, at * 7 (internal quotation marks and citations omitted). In the

fourth amended complaint, plaintiffs allege:

> After [Dennis] filed his EEOC in reference to his wrongful
> termination and the racial discrimination to which he was
> subjected in 2011, he was retaliated against by being forced into
> a waiting car under threat of termination by [Lilley and
> Mauldin-Taylor], who required [Dennis] to take a polygraph test
> regarding the second White Power message appearing on the
> Decker Jail wall[.]

4th Am. Compl. ¶ 84. Plaintiffs include these same allegations in support of their IIED

claim. *Id.* ¶ 91 ("Defendant Mattye Mauldin-Taylor intentionally inflicted emotional distress

upon plaintiff [Dennis] by forcing him to take a polygraph test under threat of termination,

when county policy did not require him to be polygraphed."). By these allegations, plaintiffs

are "attempting impermissibly to predicate [their] IIED claim on the same conduct which

underpins" their retaliation claim. *Muniz v. El Paso Marriott*, 2009 WL 4878619, at *3

- 14 -

(W.D. Tex. Dec. 8, 2009) ("Under Texas law, a claim for IIED is not available against an employee's supervisor if the same alleged conduct supports a claim for relief against the employer under other legal theories, such as the anti-discrimination statutes."). Accordingly, the court grants the Individual Defendants' Rule 12(c) motion as to this claim.[12]

## V

The court now turns to Womble's motion for judgment on the pleadings on plaintiffs' hostile work environment claim brought against him in his individual capacity under § 1983.

## A

To state a claim in an individual capacity suit brought under § 1983, a claimant must allege a violation of the Constitution or federal law by a person acting under color of state law. 42 U.S.C. § 1983. Although "[t]he generic pleading requirements of [Rule 8] govern suits against individual defendants in their official capacity," "[p]laintiffs suing governmental officials in their individual capacities . . . must allege specific conduct giving rise to a constitutional violation." *Oliver v. Scott*, 276 F.3d 736, 741 (5th Cir. 2002) (citing *Anderson*

---

[12]Plaintiffs assert various other IIED claims against the Individual Defendants in their individual capacities. *See, e.g.,* Ps. Rule 7(a) Reply 41 (asserting IIED claim against Mauldin-Taylor and Lilley in their individual capacities based on their alleged attempt to bribe Lawson to stop exposing the discrimination within Dallas County); *id.* at 43 (asserting IIED claim against Wright in his individual capacity based on the physical threats he allegedly made to Dennis); *id.* (asserting IIED claim against Wright in his individual capacity based on his allegedly holding Dennis for questioning regarding the distribution of a bulletin regarding Womble). Because the Individual Defendants do not address these claims in their motion for judgment on the pleadings, the court does not consider whether these claims are barred for the reasons discussed above or are subject to dismissal on another basis.

*v. Pasadena Indep. Sch. Dist.*, 184 F.3d 439, 443 (5th Cir. 1999)). "This standard requires more than conclusional assertions: The plaintiff must allege specific facts giving rise to a constitutional violation." *Id.* (citing *Baker v. Putnal*, 75 F.3d 190, 194 (5th Cir. 1996)). Additionally, in the context of § 1983 claims against supervisors, "[f]or there to be liability under section 1983, a defendant must have been personally involved in the conduct causing a deprivation of constitutional rights, or there must be a causal connection between the actions of that person and the constitutional right sought to be redressed." *King v. Louisiana*, 294 Fed. Appx. 77, 83 (5th Cir. 2008) (per curiam) (citing *Lozano v. Smith*, 718 F.2d 756, 768 (5th Cir. 1983)) (affirming dismissal of claims against individual defendants, based on qualified immunity, where the allegations against these defendants failed to set forth any constitutional violation); *see also Anderson*, 184 F.3d at 443 ("In order to state a cause of action under § 1983, [plaintiff] must identify defendants who were either personally involved in the constitutional violation or whose acts are causally connected to the constitutional violation alleged.").

## B

In their Rule 7(a) reply, plaintiffs assert two grounds for their § 1983 hostile work environment claims against Womble in his individual capacity.[13]  First, they allege that, on

_____

[13]In the fourth amended complaint, plaintiffs also allege that in 2010, in the presence of plaintiffs, several managers, and plaintiffs' coworkers, Womble placed false gold teeth in his mouth and began strutting around the room stating, "[t]his is how we do it in the hood," as a racist joke directed at African-American employees in general and at Lawson in particular.  4th Am. Compl. ¶ 70.  In their Rule 7(a) reply, however, plaintiffs limit these allegations to their claim against Womble in his official capacity.  The court thus does not

two occasions in October 2010, Womble played (once in the presence of Dennis) a cell phone animation of a cooked and dressed turkey with the head of an African-American man that said "gobble, gobble, ni—r, ni---r."[14] Ps. Rule 7(a) Reply 21.  Plaintiffs contend that Dennis twice asked Womble to stop playing the animation and that Womble told Dennis to get back to work.  They also maintain that Womble, in the presence of Caucasian managers, said to a group of predominantly minority workers, including plaintiffs, that they would be beaten in the boiler room for what Womble considered unsatisfactory performance.  Plaintiffs allege that Womble disputes that he said workers would be beaten and asserts that he instead said departmental problems were to be "handled internally."  *Id.* at 22.  In his 12(c) motion, Womble argues that the sole basis for plaintiffs' hostile work environment claim under § 1983 against him, individually, is one statement that Womble allegedly made to a group of employees, both within and outside of the protected class, and that this one statement is not severe or pervasive and is insufficient to establish that Womble subjected plaintiffs to harassment that was sufficiently severe or pervasive as to affect a term, condition, or privilege of employment.  Womble posits that the statement was not pervasive because it was made on only one occasion, and he argues that the statement was not based on race because

---

consider whether these acts, alone or in combination with the facts alleged in support of plaintiffs' individual-capacity claim against Womble, would be sufficient to state a claim under § 1983.

[14]In this memorandum opinion and order, the court has used the redaction "ni—r" in place of the actual term.  Accordingly, the court will not hereafter indicate that the term has been altered.

it was allegedly made to all employees.  He argues that, to the extent plaintiffs contend the one statement he made, when coupled with the actions of the other Individual Defendants, affected a term, condition, or privilege of their employment, he is entitled to judgment because plaintiffs do not allege that he was personally involved in the other alleged incidents of harassment.

Plaintiffs  respond that Womble's motion fails to address their assertion that he used the word "ni---r" at work in front of at least one plaintiff, and that, "under federal common law, using the word 'ni[---]r' at work even once and alone as a matter of law qualifies as actionable hostility," and that a Caucasian supervisor threatening to physically beat minority workers for unsatisfactory performance alters the terms and conditions of employment.  Ps. Br. 5.

C

The court holds that plaintiffs have failed to plausibly allege that Womble was personally involved in harassment that was so severe that it affected a term, condition, or privilege of employment.  Regarding the alleged threat to beat workers in the boiler room for unsatisfactory performance, plaintiffs have alleged that Womble made this comment to a group of employees that included non-African American workers.  The comment itself, which if meant seriously is inappropriate in the workplace, does not contain any racially motivated content.  The cell phone animation, however, does contain race-based content.  But allegations that, on two occasions, Womble audibly played a racially offensive animation on his cell phone in the presence of one of the plaintiffs is insufficient to plausibly allege

harassment that was so severe and pervasive that it altered the conditions of the plaintiffs'

employment.  Plaintiffs' argument that "using the word 'ni---r' at work even once and alone

as a matter of law qualifies as actionable hostility," *id.* at 5, misstates the holding of *Ayissi-*

*Etoh v. Fannie Mae*, 712 F.3d 572 (D.C. Cir. 2013) (per curiam), even if it were binding

precedent.  In *Ayissi-Etoh* the plaintiff brought a hostile work environment claim against *his*

*employer*, a federal agency.  *Ayissi-Etoh*, 712 F.3d at 574.  In support of the claim, he alleged

that a vice president at the agency shouted at him to "get out of my office ni—r," *id.*, that he

was forced to continue working with this person for three months after the incident, and that

he was intentionally denied a pay increase based on race.  The court held that a fact issue

precluded summary judgment on the plaintiff's hostile work environment claim, and stated

that "'perhaps no single act can more quickly alter the conditions of employment' than 'the

use of an unambiguously racial epithet such as "ni---r" by a supervisor.'" *Id.* at 577 (quoting

*Rodgers v. W.–S. Life Ins. Co.*, 12 F.3d 668, 675 (7th Cir. 1993)); *see also Rodgers*, 12 F.3d

at 675 (affirming judgment against employer on Title VII racial harassment claim where

plaintiff alleged that his supervisor, over several years, repeatedly referred to him using

offensive racial epithets and made several racially offensive comments).  In *Ayissi-Etoh*,

however, the plaintiff was not seeking to hold an individual liable for personally violating

his constitutional rights, and, in any event, he alleged more than a single incident of the use

of a racial epithet.  In contrast, plaintiffs allege here that Womble twice played a cell phone

animation containing the word "ni—r," which one plaintiff saw and overheard.  While this

behavior, assuming it occurred, should not be condoned in the workplace, it is insufficient

to establish a hostile work environment.[15]  Accordingly, Womble is entitled to judgment on the pleadings dismissing the § 1983 hostile work environment claim asserted against him in his individual capacity.

D

Womble moves pursuant to Rule 54(b) for the entry of a final judgment in his favor on the claims brought against him in his individual capacity.  Plaintiffs oppose the motion. Because plaintiffs failed to amend their complaint as permitted in *Jones I*, 2013 WL 6388441, at *8, the fourth amended complaint remains the operative complaint.[16]  All individual-capacity claims against Womble except the § 1983 hostile work environment claim were dismissed in *Jones I*, and the court today is dismissing the individual-capacity § 1983 hostile work environment claim.  Because there are no remaining causes of action asserted against Womble in his individual capacity, the court concludes that he is entitled to entry of a final judgment under Rule 54(b), which the court is filing contemporaneously with

---

[15]Plaintiffs have limited their § 1983 individual capacity claim against Womble to the two instances described above.  The court does not suggest that these incidents, in combination with other racially-motivated harassing behavior, would not be enough to state a viable claim against Womble in his individual capacity.  Nor does the court suggest that these incidents, in combination with the allegations against the other individual defendants in this case, would be insufficient to state a hostile work environment claim against Dallas County.

[16]Although plaintiffs have included specific allegations against Womble in their Rule 7(a) reply, they do not argue that these allegations take the place of an amended complaint and, in essence, "revive" dismissed claims asserted against Womble in his individual capacity.  Nor will the court permit them to pursue previously-dismissed claims by including them in a Rule 7(a) reply.

this memorandum opinion and order.

## VI

The May 1, 2012 amended scheduling order ("Scheduling Order") in this case required that motions for summary judgment be filed by December 15, 2013.  On November 25, 2013 the court granted the parties' joint motion for an extension of the summary judgment deadline to January 10, 2014.  The Individual Defendants moved on January 2, 2014 to stay the summary judgment deadline until "such time as the Court has determined that the pleadings are factually specific enough to overcome each of the individual Defendants' right to qualified immunity."  Ps. Jan. 2, 2014 Mot. at 2.[17]

The court is today granting the Individual Defendants' motion to dismiss plaintiffs' § 1983 claims brought against them in their individual capacities and the IIED claim brought against Mauldin-Taylor, Wright, and Lilley in their individual capacities based on their allegedly forcing Dennis to take a polygraph test.  It is also dismissing the § 1983 hostile work environment claim brought against Womble in his individual capacity and entering a Rule 54(b) judgment in favor of Womble in his individual capacity.  The court is not permitting any further amendment to the pleadings and can discern no reason to further delay

---

[17]Plaintiffs oppose the motion, arguing that at the time the Individual Defendants filed the motion to stay, no motion for judgment on the pleadings was pending, and, under the Scheduling Order, the motion to stay summary judgment deadlines was filed late.  They further contend that defendants are motivated by gamesmanship in seeking permission to extend the summary judgment deadlines, and they posit that, because defendants have provided the court with no information to enable it to determine whether the tardiness of filing was due to mistake, inadvertence, or carelessness, the Individual Defendants' motion must be denied.  Ps. Br. 3.

the filing of summary judgment motions.  Accordingly, the court orders the parties, within 21 days of the date this memorandum opinion and order is filed, to confer and submit to the court a proposed briefing schedule for the submission of summary judgment motions.

\*   \*   \*

For the foregoing reasons, the court grants the Individual Defendants' motion for judgment on the pleadings under Rule 12(c) and dismisses the § 1983 claims brought against the Individual Defendants in their individual capacities and the IIED claim brought against Mauldin-Taylor, Wright, and Lilley in their individual capacities based on their allegedly forcing Dennis to take a polygraph test.  The court also grants Womble's second motion for judgment on the pleadings and dismisses the § 1983 hostile work environment claim brought against him in his individual capacity.  The court is entering a Rule 54(b) judgment in Womble's favor on the claims brought against him in his individual capacity.  The court orders the parties, within 21 days, to confer and propose a briefing schedule for the submission of summary judgment motions.

**SO ORDERED**.

April 23, 2014.

_____
SIDNEY A. FITZWATER
CHIEF JUDGE